HENRY WIGGINS AND JANE ELIZABETH WIGGINS, HIS WIFE, PLAINTIFFS, *v.* CLARISSA R. HOWARD, SUSAN POSTEN, WILLIAM POSTEN AND JULIA A. SCHENCK, DEFENDANTS.

*Referee to sell in action for partition—duty of, as to securities to be taken for the purchase price—what acts of the beneficiaries amount to a ratification of his act in taking an unauthorized security instead of cash.*

APPEAL from an order made at Special Term, denying a motion to confirm the report of a referee made herein.

This action was brought for the partition of certain land, and resulted in a sale thereof for a large sum, under the direction of James F. Pierce, a referee appointed for that purpose. The sale was had on July 8, 1868, and the proceeds were received and disbursed by one of the plaintiffs' attorneys instead of by the referee. Susan Posten, one of the defendants in the action, had a dower right and life interest in the premises, estimated at $30,621.61, which belonged to her daughter, the defendant Julia A. Schenck. General Crook, one of the plaintiffs' attorneys, was the counsel of these two defendants, and, in pursuance of a provision in the judgment, mortgages were taken from purchasers for $16,841.50 to the referee, and assigned to the county treasurer, and for the purpose of making up the remainder of the $30,621.61, General Crook executed a bond and mortgage on his own property to the county treasurer for $13,780.11. All of these bonds and mortgages were received by the county treasurer on November 28, 1873, and down to this time the interest on Mrs. Posten's share was paid to her daughter by General Crook. On November 25, 1873, Susan Posten and Julia A. Schenck conveyed the fund of $30,621.61 to Abraham V. Schenck, the husband of Julia A. Schenck, in trust for their benefit, and on the first day of December thereafter he presented a petition to the court, setting out the assignment to him and asking for an order that the county treasurer deliver the said bond to him. On December 5 an order was made at Special Term, directing the

county treasurer to assign the bonds and mortgages to Mr. Schenck, and all of them were so assigned and delivered to him, including the bond and mortgage from General Crook. From that time down to September, 1876, Mr. Schenck collected the interest and then extended the time for the payment of the Crook mortgage for two years. On March 18, 1878, Mr. Schenck resigned his position as trustee and transferred the estate to his wife, who was thereupon appointed trustee in his place. Thereafter this application was made to compel the referee to pay over the sum of $13,780.11 for which the Crook mortgage was taken, and a referee appointed to examine the matter reported in favor of granting the petition; but the court at Special Term refused to confirm the report and denied the application.

The court, at General Term, said: "It was the duty of the referee on the sale of the premises to receive the purchase-money therefor or purchase-money mortgages, in pursuance of the provisions of the judgment in that behalf, and the defendants, Mrs. Posten and Mrs. Schenck, were in a position to require the full performance of such duty. Instead of doing so, however, they relied upon General Crook, who was their counsel, to receive this particular fund and invest the same, and for more than five years after the sale they received the interest thereon from him, under the full belief that it had been invested by him. Then in 1873 they found precisely how the fund was invested, and instituted proceedings to have all the bonds and mortgages delivered up to their trustee by the county treasurer, and they were so delivered and held until March, 1878, during all of which time the interest was paid on the Crook bond and mortgage by him. It matters not that neither the referee nor the county treasurer had the right in the first instance to receive the Crook bond and mortgage in place of cash. If the conduct of the beneficiaries of the fund had been such in relation thereto as fairly to indicate a ratification thereof, that is equal to an original authority. Have we evidence of such ratification ? For ten years after the sale the interest on the fund was received from General Crook, and for the last five years it was so received with the full knowledge that his bond and mortgage

was the only security therefor; not only so, but when the same became due and payment might have been demanded and urged, the time for such payment was extended instead by the trustee, who was the husband of one of the beneficiaries and the son-in-law of the other. During all this time no word was said and no act was done indicating any intention to look towards the legal responsibility of the referee. On the contrary, every act indicated the full intention of the beneficiaries and their trustee to rely entirely upon their bond and mortgage.

" The only rational interpretation of the act of the beneficiaries, and their trustee, in procuring the assignment of this bond and mortgage to him, is that they intended thereby to adopt and ratify the acceptance of the same by the county treasurer. Certainly then, if never before, they were called upon to repudiate this bond and mortgage and call upon the referee, if ever they intended so to do. Then all the facts stood disclosed, and they not only accepted the bond and mortgage, but when it came due extended the time for its payment. It is now too late to avoid that election, and they must be held to have accepted the bond and mortgage, and adopted and ratified the act of the county treasurer in taking the same in place of the money. "

*Morris & Pearsall,* for the defendants, Julia A. Schenck, and Susan Posten, appellants.

*Edgar M. Cullen,* for James F. Pierce, referee.

Opinion by DYKMAN, J.; GILBERT, J., concurred; BARNARD, P. J., not sitting.

Order affirmed, with costs.